IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| BRIAN L. PIERCE, | ) | Case No. 4:11-cv-01222-BP |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| PLAINS COMMERCE BANK, | ) | |
| | ) | |
| Defendant. | ) | |

**SUGGESTIONS IN SUPPORT OF DEFENDANT'S
MOTION TO COMPEL ARBITRATION AND
STAY THE ACTION PENDING COMPLETION OF ARBITRATION**

Defendant Plains Commerce Bank ("PCB," or "Defendant"), by and through its undersigned counsel, respectfully submits its Suggestions in Support of its Motion to Compel Arbitration and Stay The Action Pending Completion of Arbitration.

**INTRODUCTION**

Plaintiff Brian Pierce brought this action against PCB, alleging that PCB violated the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* (the "TCPA"). Specifically, Plaintiff alleges that, beginning in November 2009, PCB contacted Plaintiff on his cellular telephone using an "automatic telephone dialing system," as that term is defined in the TCPA. See 47 U.S.C. § 227(a)(1). (Compl. ¶ 15.) Plaintiff acknowledges that PCB's calls to him were made in connection with their attempts to collect a debt. (See id. at ¶¶ 13-14.) However, the credit agreement that governed Plaintiff's account with PCB contains a binding arbitration provision that governs, among other things, **"matters pertaining to …collections"** of indebtedness on the account. PCB has, therefore, moved the Court for an order compelling arbitration and staying this action pending completion of the arbitration.

# STATEMENT OF FACTS

## I.     The Parties and the Account.

Plaintiff is resident of the State of Missouri. (Compl. ¶ 2.)  Defendant is a South Dakota corporation. (Id. at ¶ 3.)  Plaintiff applied for and obtained his account with Plains Commerce Bank – an "Ascent" Visa credit card – in December of 2004, when he was a resident of Iowa. (Affidavit of David Noyes in support of Defendant's Motion ("Noyes Aff.") ¶ 3.)  From its inception, Plaintiff's account was assigned to Resurgent Capital Services, LP ("Resurgent"), an affiliate of Alegis Group, L.P. ("Alegis"), for servicing.  (See Noyes Aff. ¶ 1.)

## II.    Plaintiff's Allegations and the Litigation.

Plaintiff commenced this Complaint by filing a Complaint in the 7th Judicial Circuit Court, in Clay County, Missouri.  PCB removed the matter to the United States District Court for the Western District of Missouri.  (See Docket #1.)  Plaintiff alleges that, "on multiple occasions" since November of 2009, PCB has contacted Plaintiff on Plaintiff's cellular telephones "via an automatic telephone dialing system." (Compl. ¶ 15.)  Plaintiff further alleges that he did not give prior express consent to receive calls on his cellular telephone, that the calls in question were not for emergency purposes, and that the cellular phone number called was assigned to a service for which Plaintiff incurred a charge for each incoming call.  (Id. at ¶¶ 17-19.)  Based on these allegations, Plaintiff alleges that PCB violated the TCPA, and did so knowingly and/or willfully. (Id. at ¶¶ 20, 23, 28.)  Plaintiff seeks statutory damages under the TCPA, injunctive and declaratory relief.  (See id. at pp. 5-6.)

Both parties commenced, but not completed, discovery in the litigation.  In its Amended Answer, PCB raised an affirmative defense that the action "should be stayed or dismissed to the extent it is subject to a binding agreement to arbitrate."  (See Docket #6 at p. 5.)

**III.    The Binding Arbitration Agreement.**

Plaintiff and Plains Commerce Bank entered into an agreement for a VISA credit card account to be issued to Plaintiff by Plains Commerce Bank. Although Plaintiff completed the application process over the phone, he was mailed an approval letter by Alegis Group, LP, an affiliate of Resurgent, and the company that would service the VISA account. (Noyes Aff. ¶ 4.) A template copy of the approval letter used by Alegis in December of 2004 is attached to the Noyes Affidavit as Exhibit A. Plaintiff was also sent the credit card itself, along with a Credit Account Agreement, by PCB. (Noyes Aff. ¶ 5.) A copy of the Credit Account Agreement in use by PCB in December of 2004 is attached to the Noyes Affidavit as Exhibit B.

Both the approval letter and the Credit Account Agreement state that all disputes relating to the credit card will be subject to binding arbitration. Page 2 of the Approval Letter states:

> If you are issued a credit card, your cardholder agreement will contain a binding arbitration agreement. **In the event of any dispute relating to your credit card or cardholder agreement, the dispute will be resolved by binding arbitration pursuant to the rules of the American Arbitration Association and both you and we waive the right to go to court or to have the dispute heard by a jury…**When you receive your Credit Account Agreement you should read the arbitration provision carefully and contact us within sixty (60) days in writing if you do not agree to the terms of the Arbitration Agreement.

(Noyes Ex. A p. 2, emphasis added.) The arbitration provision itself, in the Credit Account Agreement, sets forth, in relevant part, that:

> A "Dispute" is any controversy or claim of any type or nature between you (or any Authorized User) and us or our employees, officers, directors, attorneys, and other representatives and agents (including Alegis Group, LP) arising out of or in any way relating to this Contract or your cardholder relationship or the indebtedness transferred to your Card (**including any matters pertaining to** marketing, **collections**, or this Arbitration Agreement and any claims under the Truth-in-Lending Act, Federal Trade Commission Act or the Fair Debt Collection Practices Act and whether the Disputes relates to matters which arose before or after your card is issued). **You agree that this is a contract involving interstate commerce which is subject to the Federal Arbitration Act and that any Dispute shall be settled by binding arbitration in accordance with the rules**

3

OM 186534.1

Case 4:11-cv-01222-BP   Document 17   Filed 04/19/12   Page 3 of 9

> **and procedures of the American Arbitration Association ("AAA") relating to consumer disputes.**

(Noyes Aff. Ex. B at ¶ 22, emphasis added.) The arbitration provision goes on to provide instructions on how to advise Alegis Group, LP that the cardholder does not wish his account to be subject to the Arbitration Agreement. Here, Plaintiff never advised Alegis or Resurgent that he did not want his Ascent Visa card to be subject to the Arbitration Agreement. (Noyes Aff. ¶ 6.)

## ARGUMENT

**A. THE COURT SHOULD COMPEL THE PARTIES TO ARBITRATE THEIR DISPUTE AND STAY ALL PROCEEDINGS IN THIS CASE PENDING THE DISPOSITION OF ANY ARBITRATION CASE.**

The Federal Arbitration Act ("FAA") applies to contracts containing arbitration provisions that involve interstate commerce. 9 U.S.C. § 2. The United States Supreme Court has interpreted the phrase "involving interstate commerce" broadly to include any transaction that affects interstate commerce, "even if the parties did not contemplate an interstate commerce connection." Allied-Bruce Terminix Cos. v. Dobson, 513 U.S. 265, 281 (1995). Moreover, here, the arbitration provision itself sets forth that the contract involves interstate commerce. (See Noyes Ex. B at ¶ 22.)

The FAA permits a district court to issue an order compelling parties to arbitrate a dispute subject to an arbitration agreement. 9 U.S.C. § 4. The FAA further permits a district court to issue an order staying all proceedings pending the disposition of an arbitration case. Id. § 3. Congress, through the FAA, intended "'to move the parties to an arbitrable dispute out of court and into arbitration as quickly and easily as possible.'" Madol v. Dan Nelson Automotive Group, 372 F.3d 997, 999 (8th Cir. 2004) (quoting Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1 (1983)). A "party resisting arbitration bears the burden of proving that

the claims at issue are unsuitable for arbitration." Id. (quoting Green Tree Fin. Corp. v. Randolph, 531 U.S. 79 (2000)).

The issues to be resolved by a district court in response to a motion to compel arbitration depend upon the terms of the arbitration agreement. Where parties "clearly and unmistakably" agree that the validity of their arbitration agreement and the arbitrability of their dispute are to be determined by an arbitrator, those issues must be submitted to arbitration. First Options of Chicago v. Kaplan, 514 U.S. 938, 944 (1995). Where, on the other hand, the parties do not have such an agreement, the validity of the arbitration agreement and the arbitrability of the parties' dispute must be determined by the district court. AT&T Technologies, Inc. v. Communications Workers of America, 475 U.S. 643, 649 (1986).

In evaluating whether a dispute is subject to arbitration, courts must determine "(1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute." Pro Tech Indust., 377 F.3d at 871; accord Madol, 472 F.3d at 999; Gannon v. Circuit City Stores, Inc., 262 F.3d 677, 680 (8th Cir. 2001). If the answers to these questions are in the affirmative, the FAA "'mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed.'" Pro Tech Indust., 377 F.3d at 871 (quoting Dean Witter Reynolds, 470 U.S. at 218).

The record is clear that both a valid agreement to arbitrate exists and that the dispute in question is subject to the parties' agreement. Paragraph 22 of the Credit Account Agreement provides that "[Card Applicant] agree[s] that this is a contract involving interstate commerce which is subject to the Federal Arbitration Act and that any Dispute shall be settled by binding arbitration in accordance with the rules and procedures of the American Arbitration Association ("AAA") relating to consumer disputes." (See Noyes Aff. Ex. B ¶ 22.)
5

**B. THE ARBITRATION PROVISION IS VALID AND ENFORCEABLE UNDER SOUTH DAKOTA LAW.**

State law governs the determination of whether there exists a valid agreement to arbitrate a plaintiff's claims. See, e.g., First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944 (1995) ("When deciding whether the parties agreed to arbitrate a certain matter (including arbitrability), courts generally…should apply ordinary state-law principles that govern the formation of contracts"); Doctor's Assocs. v. Casarotto, 517 U.S. 681, 687 (1996) (holding that under the FAA, general state law rules governing the formation of contracts apply with equal force to arbitration provisions and that arbitration provisions cannot be treated differently than other contract provisions). Here, the Agreement containing the Arbitration Provision states that it "is to be "governed by the law of the State of South Dakota and Federal law to the extent it applies." (Noyes Aff. Ex. B ¶ 23.) As set forth below, the Agreement is a valid contract under South Dakota law.

Under South Dakota Law, the essential elements of a contract are: (1) parties capable of contracting; (2) their consent; (3) a lawful object; and (4) sufficient cause or consideration. Heinert v. Home Federal Savings & Loan Ass'n of Sioux Falls, 444 N.W.2d 718, 720 (S.D. 1989). Here, there is nothing to suggest that either party was not capable of contracting, or that the object of the contract is unlawful. As to consent; Plaintiff applied for the Ascent Visa Card, by phone, on or about December 6, 2004. (Noyes Aff. ¶ 3.) Plaintiff's application was accepted and he was mailed an approval letter as well as a credit card and Credit Account Agreement. (Id. at ¶¶ 4-5.) The credit card account is governed by the terms of the Credit Account Agreement, which is supported by ample consideration. Indeed, pursuant to the terms of the Credit Account Agreement, PCB agreed to, among other things, make available a line of credit for purchases and cash advances in exchange for a promise to repay all amounts due as a result of authorized use of

the account. (Noyes Aff. Ex. B at ¶ 1.) Moreover, the Credit Account Agreement itself provides:

> You agree that this Contract (a) serves as your written acknowledgement of the justness and accuracy of the debt included in the Balance Transfer amount, (b) evidences your willingness and promise to pay the entire Balance Transfer amount pursuant to the terms of this Contract; and (c) serves as your signature to, and acceptance of, this Contract to the full extent required by any applicable law and establishes a written agreement between you and us. You agree not to use this Account unless you sign the back of your Card and accept the terms and conditions of this Contract.

(Id.) According to Resurgent's records, Plaintiff used, and paid on, the account from early 2005 until approximately June of 2009. (Noyes Aff. ¶ 7.) It is clear, therefore, that the necessary elements of a contract were present and the Arbitration Provision of the Credit Account Agreement is valid and enforceable under South Dakota law.

C. **IF THE COURT DETERMINES THAT MISSOURI LAW APPLIES, THE ARBITRATION PROVISION IS NONETHELESS VALID AND ENFORCEABLE UNDER MISSOURI LAW.**

Plaintiff may argue that because he is a Missouri resident, Missouri, not South Dakota, law should apply. Even if the Court were to apply Missouri law, the Arbitration Provision would nonetheless be valid and enforceable. Under Missouri law, for a contract to exist, there must be "an offer, acceptance, and consideration." Agri Process Innovations, Inc. v. Envirotrol, Inc., 338 S.W.3d 381, 390 (Mo. App. 2011). These elements are satisfied in this case. As set forth above, there was clearly an offer and acceptance. Plaintiff's acceptance of the offer is further evidenced by his ongoing use of the account between 2005 and 2009. (See Noyes Aff. ¶ 7.) Further, the Credit Account Agreement was supported by consideration, including PCB's agreement to extend credit to Plaintiff in exchange for his promise to pay. (See Noyes Aff. Ex. B. ¶ 1.) Therefore, the Credit Account Agreement, and the Arbitration Provision found in Paragraph 22 therein, is also valid and enforceable under Missouri law.

The Credit Account Agreement's Arbitration Clause is unambiguous. It defines "Dispute" as "any controversy or claim of any type or nature between you (or any authorized user) and us or our employees, officers, directors, attorneys, and other representatives and agents (including Alegis Group, LP) arising out of or in any way relating to this Contract **or the indebtedness transferred to your Card**[1] (**including any matters pertaining to … collections or this Arbitration Agreement…**). (Noyes Aff. Ex. B ¶ 22, emphasis added.)

By Plaintiff's own admission, his allegations arise from actions Defendant PCB and its agents and representatives took to collect on Plaintiff's account. (See, e.g. Compl. ¶ 14 ("Defendant [PCB] has constantly and continuously placed collection calls to Plaintiff seeking and demanding payment for an alleged debt with the intent to annoy, abuse, and/or harass.").) It is the collections calls that Plaintiff takes issue with and give rise to his TCPA claims. As such, the dispute is a matter "pertaining to" collections and is explicitly contemplated by the Arbitration Agreement.

## CONCLUSION

The parties entered into a Credit Account Agreement that contains an arbitration clause covering the subject matter of Plaintiff's Complaint. Under the FAA, this arbitration clause is valid and enforceable. Defendant PCB, therefore, respectfully requests that this Court compel Plaintiff to arbitrate the matter, as he agreed to do in the Credit Account Agreement, and stay further proceedings, including discovery, in this matter pending the outcome of arbitration.

---

[1] The nature of Plaintiff's "Ascent" card was that a charged-off balance from another credit card opened by Plaintiff was transferred to the Ascent VISA card, thereby allowing Plaintiff to pay off an old debt while building credit using the new Ascent Card.

DATED this 19th day of April, 2012.

                                            PLAINS COMMERCE BANK, Defendant

                                    By: s/ Joshua C. Dickinson
                                          Joshua C. Dickinson, Bar Number 51446
                                          Attorneys for Defendant
                                          Spencer Fane Britt & Browne LLP
                                          1000 Walnut, Suite 1400
                                          Kansas City, MO 64106
                                          Telephone: (816) 474-8100
                                          Facsimile: (816) 474-3216
                                          E-mail: jdickinson@spencerfane.com

## **CERTIFICATE OF SERVICE**

I hereby certify that the foregoing document was filed electronically with the United States District Court for the Western District of Missouri, this 19th day of April, 2012, with notice of case activity generated and sent electronically to all counsel of record.

                                            s/ Joshua C. Dickinson
                                            Attorney for Defendant