IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI

| | |
|---|---|
| Brian L. Pierce, ) | Case No. 4:11-cv-01222 |
| Plaintiff, ) | |
| v. ) | |
| Plains Commerce Bank, ) | |
| Defendant. ) | |

## AFFIDAVIT OF DAVID L. NOYES IN SUPPORT OF DEFENDANT'S MOTION TO COMPEL ARBITRATION

David L. Noyes, personally appeared and known to me, who after being by me duly sworn, upon oath deposes and says:

1. I am an authorized representative of Resurgent Capital Services ("Resurgent"), an affiliate of Alegis Group, LP ("Alegis"), which company is the master servicer for Ascent Visa card accounts issued by Defendant Plains Commerce Bank. I am making this affidavit in support of Defendant's Motion to Compel Arbitration. The facts stated in this affidavit are based on my personal knowledge and upon my review of the records of Resurgent and Alegis, and are true and correct to the best of my knowledge.

2. I am a Project Manager for Resurgent and a custodian of Resurgent's and Alegis' records related to the account of Plaintiff Brian Pierce ("Plaintiff"), which records include the records of Plains Commerce Bank related to Plaintiff's account. Resurgent's and Alegis' records related to Plaintiff are within my care, custody, and control, and I am familiar with those records. The records of Resurgent and Alegis related to Plaintiff were created contemporaneously with

the events noted in the records, and making such records is a regular practice for Resurgent and Alegis.

3. According to records in Resurgent's possession and control, Plaintiff applied for the Ascent card via telephone on or about December 6, 2004. In that telephone call, Plaintiff stated that his address was 880 Edgewater Drive, Polk City, Iowa 50226, that his home telephone number was 515-984-6038, and that his cell phone number was 507-383-1788.

4. At the time that Plaintiff's Ascent Visa card was issued, Alegis sent Plaintiff an approval letter. A template of the letter that would have been sent to Plaintiff is attached hereto as Exhibit A.

5. The actual credit card sent to Plaintiff upon his opening of the Ascent Visa card account was accompanied by a Credit Account Agreement. A copy of the Credit Account Agreement in use by Defendant PCB is attached hereto as Exhibit B.

6. To the best of my knowledge, at no time did Plaintiff reject the Arbitration Provision, or indicate to Alegis or Resurgent that he intended to do so.

7. According to Resurgent's records, Plaintiff used the Account – both incurring charges and making regular payments on the account – from early 2005 until approximately June of 2009. The Account charged off in January of 2010.

FURTHER YOUR AFFIANT SAYETH NAUGHT.

David L. Noyes

Project Manager, Resurgent Capital Services

Subscribed and sworn to before me on this 18 day of April, 2012.

Notary Public

DUSTY E. HOLBROOKS
Notary Public, South Carolina
My Commission Expires
August 10, 2019

2

1994547v1

Case 4:11-cv-01222-BP   Document 17-1   Filed 04/19/12   Page 2 of 8

*Ascent Card Program*      *Approval Letter V4 061003 ON IN*

Alegis Group, L.P.
P.O. Box 88020
Sioux Falls, SD 57109-8020

See Reverse Side For Important Legal Disclosures

March 27, 2003

Jim Anybody
1234 Debtor Street
Any City, ST 12345-6789

Credit Card Number ending: 7891
Alegis Group reference number: 123456789

Dear Jim,

**CONGRATULATIONS** and **WELCOME** to the Ascent Card Program.

The approval for your Visa credit card, which is issued by Plains Commerce Bank, Hoven, South Dakota, has been processed successfully. You will soon be receiving your card in the mail.

On <Ascent Sold Date> you agreed to balance transfer <$SettlementAmt> of the old debt you owe <Purchaser> to a new Visa credit card account in order to address this old debt. [1] <Ascent Sold Date> will serve as the **"Commencement Date"** referred to in the enclosed **"Credit Account Agreement"**. Your balance transfer amount of <$SettlementAmt> will be described as a **"Balance Transfer"** on your first credit card account statement and this amount will also be your initial balance due and credit limit.

**When you receive your Visa credit card, you will have no available credit. Your payments will create available credit.** Making at least the required minimum monthly payment on time, each month, will ensure that you have available credit on your credit card.

We know that you will be successful with your new Visa credit card account. Our customers realize that receiving a Visa credit card as a means to address an old debt is a unique opportunity that deserves a high level of commitment.

We look forward to answering your questions and assisting you in any way we can regarding your new Visa credit card account.

Sincerely,


Card Services


       This is an attempt to collect a debt and any information obtained will be used for that purpose.
                              This communication is from a debt collector.

                      Cards are issued through Plains Commerce Bank, Hoven, South Dakota.

[1] You agreed to balance transfer <$SettlementAmt> of your old debt which, as of the Commencement Date, had a current total balance due of <$TotalDueAmt>. <$ForgiveAmt> is being forgiven in connection with the issuance of your credit card. If you make no qualifying payments or charges on your new credit card account, your credit card will be cancelled and this partial forgiveness of your old debt will be reversed. *(See Section 11 of the enclosed Credit Account Agreement for specific terms regarding reversal of the partial forgiveness.)*

**EXHIBIT A**

## ARBITRATION OF DISPUTES

If you are issued a credit card, your cardholder agreement will contain a binding arbitration agreement. In the event of any dispute relating to your credit card or cardholder agreement, the dispute will be resolved by binding arbitration pursuant to the rules of the American Arbitration Association and both you and we agree to waive the right to go to court or to have the dispute heard by a jury. You also agree to waive your right to participate as part of a class of claimants relating to any dispute with us or our representatives. Other rights available to you in court may also be unavailable in arbitration. When you receive your Credit Account Agreement you should read the arbitration provision carefully and contact us within sixty (60) days in writing if you do not agree to the terms of the Arbitration Agreement.

## CANCELLATION PRIVILEGE

You may cancel your credit card without incurring any fees before you make a cash advance, purchase or payment. Please read carefully the terms of the enclosed Credit Account Agreement, including the cancellation privilege in Section 11.

- Describe the error and explain, if you can, why you believe there is an error. If you need more information, describe the item you are not sure about.

If you have authorized us to pay your credit Card bill automatically from your savings or checking Account, you can stop the payment on any amount you think is wrong. To stop the payment your letter must reach us three (3) business days before the automatic payment is scheduled to occur.

### Your Rights and Our Responsibilities After We Receive Your Written Notice

We must acknowledge your letter within thirty (30) days, unless we have corrected the error by then. Within ninety (90) days, we must either correct the error or explain why we believe the bill was correct.

After we receive your letter, we cannot try to collect any amount you question, or report you as delinquent. We can continue to bill you for the amount you question, including finance charges, and we can apply any unpaid amount against your Credit Limit. You do not have to pay any questioned amount while we are investigating, but you are still obligated to pay the parts of your bill that are not in question.

If we find that we made a mistake on your bill, you will not have to pay any finance charges related to any questioned amount. If we didn't make a mistake, you may have to pay finance charges, and you will have to make up any missed payments on the questioned amount. In either case, we will send you a statement of the amount you owe and the date that it is due.

If you fail to pay the amount that we think you owe, we may report you as delinquent. However, if our explanation does not satisfy you and you write to us within ten (10) days telling us that you still refuse to pay, we must tell anyone we report you to that you have a question about your bill. And, we must tell you the name of anyone we reported you to. We must tell anyone we report you to that the matter has been settled between us when it finally is.

If we don't follow these rules, we can't collect the first $50 of the questioned amount, even if your bill was correct.

### Special Rule for Credit Card Purchases

If you have a problem with the quality of property or services that you purchased with a credit Card, and you have tried in good faith to correct the problem with the merchant, you may have the right not to pay the remaining amount due on the property or services. There are two limitations of this right:

(a) You must have made the purchase in your home state or, if not within your home state, within 100 miles of your current mailing address; and
(b) The purchase price must have been more than $50.

These limitations do not apply if we own or operate the merchant, or if we mailed you the advertisement for the property or services.

NCH3 12/04

---

## Issued by
## Plains Commerce Bank
## Hoven, South Dakota

### CREDIT ACCOUNT AGREEMENT

This Credit Account Agreement ("Contract") between you and Plains Commerce Bank governs the use of your Visa®/MasterCard® Credit Account ("Account"). Subject to your privilege to cancel the Account as described in Paragraph 11 below, this Contract is effective as of the Commencement Date (as defined in Paragraph 2.I below). Please take the time necessary to read and understand this Contract and then save it for your records.

1. **Certain Agreements and Waivers.** You agree to be liable and promise to pay us for all Purchases (including the entire amount of the debt transferred to your Account as a Balance Transfer), Cash Advances and other charges made on your Account by you or any Authorized User, and Finance Charges and other charges, as provided for by this Contract. You understand that you are acknowledging, confirming and ratifying the debt transferred to your Account as a Balance Transfer. To the full extent allowed by law, you are waiving any defense that would prevent us from collecting the Balance Transfer amount. You agree that this Contract (a) serves as your written acknowledgement of the justness and accuracy of the debt included in the Balance Transfer amount, (b) evidences your willingness and promise to pay the entire Balance Transfer amount pursuant to the terms of this Contract, and (c) serves as your signature to, and acceptance of, this Contract to the full extent required by any applicable law and establishes a written agreement between you and us. You agree not to use this Account unless you sign the back of your Card and accept the terms and conditions of this Contract.

2. **Definitions.**

Other defined terms used in the Contract include:

A. **"Authorized User"** means anyone you authorize to use the Card or your Account to obtain credit. You agree to be obligated for credit obtained by the Authorized User as if that credit were obtained by you. The Authorized User will also be responsible for paying amounts resulting from the Authorized User's use of the Account, but we are not required to seek payment from the Authorized User before requiring payment from you.
B. **"Average Daily Balance"** has the meaning set forth in paragraph 5.A below.
C. **"Balance Transfer"** means the transfer to this Account of any prior indebtedness to which you agreed when you applied for this Account.
D. **"Billing Cycle"** means a monthly billing period which begins on or about the same day of each month.
E. **"Card"** means the credit card issued in connection with your Account.
F. **"Cash Advances"** means credit you or an Authorized User obtain on your Account in any of the following ways: (i) by presenting the Card (or any other credit device we supply to you) to us or to any other participating financial institution to obtain cash or to make a transfer from your Account to any other deposit or loan account, or (ii) by using the Card at an automated teller machine ("ATM") or other device to obtain cash or to make a transfer from your Account to any other deposit or loan account. A Cash Advance is made at the time you obtain cash or we make any transfer at your request.
G. **"Closing Date"** means the last day of any Billing Cycle.
H. **"Credit Limit"** means the maximum amount of credit we have approved on your Account which may be outstanding at any time.
I. **"Commencement Date"** means the date on which the Balance Transfer of your debt is posted to your Account.
J. **"Minimum Payment"** has the meaning set forth in paragraph 8 below.
K. **"New Balance"** means the outstanding balance of your Account at the end of any Billing Cycle. The New Balance is the sum of the "Previous


EXHIBIT B

Balance" (defined as the New Balance shown on your last Statement), less payments and credits, plus new Cash Advances, Purchases, Finance Charges and other charges posted during the Billing Cycle.
L. **"Payment Due Date"** has the meaning set forth in paragraph 8 below.
M. **"PIN"** means the Personal Identification Number which is assigned to your Account. You may request a PIN at anytime.
N. **"Previous Balance"** has the meaning defined in paragraph 2.K above.
O. **"Purchase"** means credit you or an Authorized User obtain on your Account when you present the Card or Card number to a merchant honoring the Card to purchase goods and/or services and we pay the merchant on your behalf for the transaction. Purchases also include any Balance Transfer as of the date of the Balance Transfer.
P. **"Statement"** means a Statement of your Account. We send a statement at the end of any Billing Cycle in which we owe you, or you owe us, more than $1; we impose any charge on your Account; or any payment, credit, Cash Advance or Purchase is posted to your Account.
Q. **"Us," "our," or "we"** refer to Plains Commerce Bank except as otherwise specifically provided in this Contract.
R. **"You"** and **"your"** refer to the person who applied for the Account.

**3. Using Your Account to Obtain Credit.** You can use the Card and your Account to make Purchases or to obtain Cash Advances at any time, so long as your account is in good standing. You may not use the Card or your Account for any illegal transaction or any gambling transaction. We may impose restrictions on the following: (a) the number of transactions allowed per day; (b) the dollar amount of transactions approval; and (c) your right to obtain Cash Advances. You may obtain only $100.00 per day in Cash Advances, and you may obtain only one-half of your Credit Limit in the form of Cash Advances. We will decline identifiable gambling transactions. When you receive the Card, you may request that a PIN be sent to the address listed on the account at any time. Once received, you may, at our discretion, obtain a Cash Advance at any authorized financial institution or ATM by using the Card and PIN.

**4. Credit Limit/Credit Availability.** Your initial Credit Limit will be the amount of debt transferred to your Account. When your Card is issued, you will have no credit available for use. Before making Purchases, Cash Advances, or other debits to your Account, you must first make a Minimum Payment on the Account. Your Credit Limit is shown on your Statements. We reserve the right to periodically reevaluate your Account and increase or decrease your Credit Limit. You may not exceed your Credit Limit at any time. At our sole discretion, we may permit you to obtain additional credit which exceeds your Credit Limit. If we do, the amount that exceeds your Credit Limit will be included in the Minimum Payment on your next Statement.

**5. Finance Charges.** You agree to pay us the following charges and fees which are deemed Finance Charges under applicable law:

A. **Periodic Finance Charges.** Finance Charges are imposed from the time a Purchase, including the Balance Transfer, is posted to your Account until it is paid in full. If you paid the Previous Balance in full by the Payment Due Date shown on your previous Statement, no Finance Charges will be assessed on new Purchases listed on your current Statement, provided you pay the New Balance shown on your current Statement by the Payment Due Date shown on your current Statement. The Payment Due Date will be at least twenty (20) days from the Statement Closing Date. Finance Charges are imposed on Cash Advances from the date the advance is posted to your Account until it is paid in full and there is no grace period in which you may repay a Cash Advance to avoid Finance Charges.

**Computing Periodic Finance Charges.** The Finance Charge is determined by multiplying the "Average Daily Balance" for Purchases and for Cash Advances outstanding during the monthly Billing Cycle by the monthly "Periodic Rate." The monthly Periodic Rate for both Purchases and Cash Advances is 1.658%, which is equivalent to an **ANNUAL PERCENTAGE RATE** of 19.9%.

The "Average Daily Balance" is computed by taking the beginning balance of Purchases and Cash Advances each day, adding new Purchases or Cash Advances and subtracting any payments, credits, and unpaid finance charges to arrive at each day's daily balance. The daily balances are then added together and divided by the number of days in the Billing Cycle to arrive at the "Average Daily Balance." The balance of Purchases and Cash Advances will be calculated separately.

B. **Cash Advance Fee.** In addition to the monthly calculation of the Periodic Finance Charges on Cash Advances, there is an additional fee (which is a **FINANCE CHARGE**) of 3% of the amount of the Cash Advance or $10, whichever is greater, for each Cash Advance obtained during the Billing Cycle. If you obtain a Cash Advance from a third party that is not part of our system, such third party may impose its own additional fees.

C. **Minimum Finance Charge.** In any month in which a Finance Charge is due, if that Finance Charge is less than $.50 we will charge you a minimum **FINANCE CHARGE** of $.50.

D. **Replacement Card Charge.** If a Card is lost or stolen, you are required to notify us. There will be a $20 Replacement Card Charge for each replacement Card. This fee is a **FINANCE CHARGE.**

6. Other Charges.

A. **Annual Fee/Annual Additional Card Fee.** You will be charged a $35 non-refundable Annual Fee for your Account. We will not impose the $35 Annual Fee on your Account for the first year.

If you authorize us to issue an additional Card for an Authorized User, there will be a non-refundable Annual Additional Card Fee of $20 for each additional Card issued on the Account in excess of the original Card issued. The Annual Additional Card Fee is not waived for the first year.

At one year intervals on the approximate anniversary of the opening of your Account, the front side of your monthly Statement will contain a message stating that the annual fee(s) for renewal of your Card will appear as a charge on the following billing Statement. If you decide to terminate your credit availability and avoid the annual fee(s), you may do so by sending a letter to us and enclosing your credit Card(s) (cut in half) within thirty (30) days or one Billing Cycle (whichever is less) after the fee(s) appear on your Statement. In this instance, you will remain liable for any balance due, and the full balance due on your Account (including Finance Charges and any other fees, which will continue to accrue) will be payable thirty (30) days after the date you send us notice of termination of your Account.

B. **Late Charges.** We will impose a Late Charge of $19 if we do not receive at least the Minimum Payment by the Payment Due Date shown on your Statement.

C. **Returned Payment Charge.** If any check or other payment method (including an electronic funds transfer or a telephone authorized draft) is not honored for any reason by the institution on which it was drawn, there will be a Returned Payment Charge imposed on your Account in the amount of $19.

D. **Overlimit Charge.** We will impose an Overlimit Charge of $19 for each Billing Cycle if your Account balance (including assessments of Finance Charges or other charges imposed on the Account) exceeds your Credit Limit at any time during the Billing Cycle.

E. **Copying Charges.** If you request duplicates of any Statement or other document, we will charge you $3 for each page we provide, unless the request is made in connection with a proper written notice of a billing error.

**7. Statements.** The Statements we send you will reflect Purchases, including any Balance Transfer, Cash Advances, Finance Charges, other charges and fees, and payments and credits posted to your Account during the Billing Cycle. The Statements will also show your Minimum Payment and Payment Due Date. The information contained on the Statement will

Case 4:11-cv-01222-BP   Document 17-1   Filed 04/19/12   Page 6 of 8

be deemed to be correct unless you advise us, in writing, of any error within sixty (60) days after we sent you the first bill on which the error or problem appeared. Please follow directions on the back panel of this Contract titled "Your Billing Rights" to report a possible error. If there is an Authorized User on this Account, we only need to send the Statements (or any other notices with respect to this Account) to you and the notice will also be effective with respect to the Authorized User.

8. **Minimum Payments.** You may pay your entire balance at any time, without penalty. Whenever a balance is due, you must pay us at least the Minimum Payment, which we must receive on or before the Payment Due Date shown on the Statement. The Payment Due Date will be at least twenty (20) days from the Statement Closing Date. The Minimum Payment in any monthly Billing Cycle will be the sum of (i) 3% of your New Balance at the end of the Billing Cycle (rounded up to the next dollar), or $20, whichever is greater (ii) all past due Minimum Payments and (iii) the portion of your New Balance that exceeds your Credit Limit. However, if your entire balance is less than $20, the Minimum Payment will be your entire balance.

9. **Method of Payment/Availability of Credit.** Payment must be made by check or other negotiable instrument payable to us in U.S. dollars to the address shown on the billing statement. Do not send cash through the mail. Payment made through the mail in the form of third-party checks may not be accepted. All checks or negotiable instruments must be payable at a U.S. bank or at a U.S. office of a foreign bank. Payment will be credited to your Account for purposes of calculating finance charges and other fees as of the date of our receipt of payment provided the payment instructions are followed. Payments (other than those made in guaranteed funds) may not create available credit on your Account for up to twenty (20) days to allow the payment to clear. Guaranteed funds are payments made by Western Union and Money-Gram. If you have previously sent us a payment that was dishonored or returned by your financial institution for any reason, your payment may not create available credit on your Account for up to thirty (30) days to ensure the payment clears, unless the payment is made in guaranteed funds.

10. **Irregular Payments.** We may accept late payments or partial payments or checks and money orders marked "payment in full" without waiving any of our rights under this Contract. Payments should not be made by post-dated check. If we receive payment by post-dated check, we may deposit it and shall have no liability if it is posted or collected prior to the date which appears on the check.

11. **Cancellation.** The provisions of this Paragraph 11 apply in the event of cancellation of your Account when not in Default. Your Account will be automatically cancelled if, within the first three billing cycles following the Commencement Date, you do not (a) use your Card to make any Cash Advance or Purchase, other than the Balance Transfer, or (b) make a payment. In addition, you may cancel your Account at any time by writing us, at the address set forth in Paragraph 19, and by returning all Cards issued on your Account, cut in half. If you advise us that you do not want to be responsible for credit obtained or to be obtained by any Authorized User on your Account, we will treat that as a notice of cancellation. We can cancel your Account at any time and for any reason without advance notice. If we do, we will notify you in writing after the cancellation.

If your Account is cancelled, by you or by us, before you (a) make any Cash Advance or Purchase, other than the Balance Transfer, or (b) make a payment, then (i) you will not owe any fees or charges in connection with your Account and (ii) any partial forgiveness of prior debt that you were to obtain in connection with transferring the balance of such debt to the Account will not apply and the full amount of such prior debt will be payable according to its original terms, subject to any defenses you previously had. If your Account is cancelled, by you or by us, after you (a) make any Cash Advance or Purchase, other than the Balance Transfer; or (b) make a payment, then (i) you will remain liable for any balance due, and (ii) the full balance on the Account (including Finance Charges and other fees, which will continue to accrue) will be payable thirty (30) days after the date you or we send notice of cancellation.

12. **Default.** You will be in Default of this Contract if any of the following occur:

(a) you do not make a Minimum Payment on your Account on or before the Payment Due Date; (b) you become insolvent or bankrupt; (c) you exceed or attempt to exceed your Credit Limit; (d) you provide us with or have provided us with false or misleading information or signatures at any time; (e) you fail to comply with the terms of this Contract; (f) any judgment, attachment or execution is issued against you or your property; (g) you die or become legally incompetent; or (h) we reasonably deem our prospect of repayment to be materially impaired.

If your Account is in Default, we have all rights and remedies provided by law, including demanding immediate payment in full of your Account, terminating your Account without first giving notice to you, demanding the return of your Card cut in half, initiating collection activity and using any legal means we deem necessary to recover our Card from you, including, but not limited to, listing your Account in warning bulletins and offering rewards for the return of the Card. You agree to pay any costs incurred by us in attempting to recover the Card except to the extent such costs are prohibited by law.

If we waive a Default, we do not waive the right to declare the same or another event occurring later as a Default of your Account. If we start collection proceedings to recover amounts you owe us on this Contract, you agree to pay all of our costs, expenses, and attorneys' fees, except to the extent such costs, fees or expenses are prohibited by law.

13. **No Responsibility.** We are not responsible in any way for the failure or refusal of any person to honor a Card we supply to you. Furthermore, we are not responsible if any ATM or other device fails to operate or operates improperly, and, except as otherwise required by law or regulations, we will not be responsible for merchandise or services purchased through the use of your Card.

14. **Lost or Stolen Cards or Unauthorized Use.** You agree to notify us immediately at 1-800-208-5095 if your Card or Card number is lost or stolen, or if you suspect that they have been used, or may be used, without your permission.

15. **Severability.** If any provision of this Contract is invalid or unenforceable under any law, rule or regulation, such provision will be considered changed to the extent necessary to comply with the law. The validity or enforceability of any other provision of this Contract shall not be affected.

16. **Changing This Contract.** We can change this Contract at any time including, without limitation, changing the periodic rates and the way we compute the Finance Charge or Minimum Payments. We can change this Contract at any time without prior notice except where such notice is required by applicable South Dakota or Federal law. All changes will apply to amounts you owe at the time the change goes into effect as well as all new transactions and balances unless we agree otherwise.

17. **Our Property.** Each Card that we issue on your Account must be signed by the person named on it, but the Card is our property. You must surrender the Card to us upon demand.

18. **Binding Effect.** Any Purchase or Cash Advance to your Account occurring before we receive actual written notice of your death or incompetency, will be a valid and binding Account obligation upon you, your estate and your personal representative.

19. **Notices.** Any notice we send you will be considered effective when it is delivered personally to you or mailed, postage prepaid, to the last address we have for you in our records. Notice from you will be considered effective when we receive it at the address shown on your Statement or to Ascent Card Program, Alegis Group LP, at P.O. Box 88020, Sioux Falls, SD 57109-8020.

20. **Evidence.** If we go to court or an arbitration for any reason, we can use a copy, microfilm, microfiche, or other electronic image of any monthly Statement, or other document to prove what you owe us or that a transaction has taken place. The copy, microfilm, microfiche or other electronic image will have the same validity as the original.

21. **Telephone Monitoring.** You agree that we may monitor and/or record telephone calls regarding your Account to verify information and assure the quality of our service.

22. **Arbitration.** "Arbitration" is a means of having an independent third party resolve a Dispute. A "Dispute" is any controversy or claim of any type or nature between you (or any Authorized User) and us or our employees, officers, directors, attorneys, and other representatives and agents (including Alegis Group LP) arising out of or in any way relating to this Contract or your cardholder relationship or the indebtedness transferred to your Card (including any matters pertaining to marketing, collections or this Arbitration Agreement and any claims under the Truth-in-Lending Act, Federal Trade Commission Act or the Fair Debt Collection Practices Act and whether the Dispute relates to matters which arose before or after your card is issued). You agree that this is a contract involving interstate commerce which is subject to the Federal Arbitration Act and that any Dispute shall be settled by binding arbitration in accordance with the rules and procedures of the American Arbitration Association ("AAA") relating to consumer disputes. To find out how to initiate an arbitration or more about AAA arbitrations, call 1-800-925-0155, visit AAA's website at www.adr.org, or simply call any office of the AAA for more information. You and we agree that the arbitrator has no authority to conduct class-wide proceedings and will be restricted to resolving the individual disputes between the parties. The arbitrator otherwise has the ability to award all remedies otherwise available by statute, at law or in equity to the prevailing party and the authority to determine whether a particular claim is arbitrable. We agree to pay all fees and costs charged by AAA in connection with the arbitration. If you are the prevailing party in the arbitration you will be entitled to the recovery of reasonable attorneys' fees and the costs of arbitration, as determined by the arbitrator. Judgment upon the award rendered by an arbitrator may be entered in any court having jurisdiction thereof. YOU UNDERSTAND THAT IN ARBITRATION YOU WILL NOT HAVE THE RIGHT TO GO TO COURT, TO HAVE A JURY TRIAL, TO ENGAGE IN PRE-ARBITRATION DISCOVERY (EXCEPT AS PROVIDED FOR IN THE ARBITRATION RULES), OR TO PARTICIPATE AS A REPRESENTATIVE OR MEMBER OF ANY CLASS OF CLAIMANTS PERTAINING TO ANY DISPUTE. OTHER RIGHTS THAT YOU WOULD HAVE IF YOU WENT TO COURT MAY ALSO BE UNAVAILABLE IN ARBITRATION. If any portion of this Arbitration Agreement is subsequently deemed unenforceable, the enforceability of any other provision of this Arbitration Agreement shall not be affected and the unenforceable term shall be amended such that it is enforceable to the maximum extent permitted by law. This Arbitration Agreement shall continue in effect even if your Account with us is terminated or we assign your debt to another party.

*If you do not wish your Account to be subject to this Arbitration Agreement, you must advise us in writing at Ascent Card Program, Alegis Group LP, P.O. Box 88020, Sioux Falls, SD 57109-8020. Clearly print or type your name and Account number and state that you reject arbitration. You must give written notice, and it is not sufficient to telephone us. Send only your notice to reject arbitration; do not send it with a payment. We must receive your letter at the above address within sixty (60) days after the date this Contract was mailed to you or your rejection of arbitration will not be effective.*

23. **Applicable Laws.** This Contract will be governed by the law of the State of South Dakota and Federal law to the extent it applies. If there is any conflict between any of the terms and conditions of this Contract and applicable law, this Contract will be considered changed to the extent necessary to comply with the law. The other provisions shall not be affected.

24. **Credit Reports/References.** By requesting or obtaining a Credit Card, you authorize us to check your credit history from time to time as we deem necessary or appropriate. You authorize your employer, bank, and any other references listed to release and/or verify information to us and our affiliates in order to determine your eligibility for the Credit Card and any renewal or future extension of credit. If you ask, we will tell you whether or not we requested a copy of your credit report. If we did request your credit report, we will provide you with the names and addresses of the credit bureaus that furnished your report.

25. **Foreign Currency Conversion.** If you make a Purchase or Cash Advance in a foreign currency, it will be converted into U.S. Dollars by Visa International or MasterCard International. The exchange rate between the transaction currency and the billing currency used for processing international transactions is:

A. Visa Transactions – Visa International will use the procedures set forth in its Operating Regulations in effect at the time that the transaction is processed. Currently, those Regulations provide a rate selected by Visa from a range of rates available in wholesale currency markets for the applicable central processing date, which rate may vary from the rate Visa itself receives, or the government-mandated rate in effect for the applicable central processing date, in each instances, plus or minus any adjustment determined by us. We do not make any adjustments to the currency conversion rate

B. MasterCard Transactions – MasterCard International will use the Conversion Procedures published from time to time by its members and effective at the time the transaction is processed. Currently, those conversion Procedures provides that the currency conversion rate to be used is either a wholesale market rate or a government-mandated rate.

In either case, the currency conversion rate in effect on the processing date may differ from the rate in effect on the transaction date or the posting date. The currency conversion rate used may be the same as, greater than or less than the amount that would be calculated by conversion through a financial institution in the country in which the Purchase or Cash Advance occurred. We do not determine the currency conversion rate which is used and we do not receive any portion of the currency conversion rate.

26. **Entire Agreement.** The Credit Account Agreement is a final expression of the agreement between the Plains Commerce Bank and you. The Credit Account Agreement may not be contradicted by evidence of any alleged oral agreement. The Commencement Date, Balance Transfer, and any other defined terms in this Contract that refer to events, including prior oral agreements, as part of the definition of such term, incorporate those events by reference into the defined term and this Contract.

### KEEP THIS NOTICE FOR FUTURE USE

### YOUR BILLING RIGHTS

This notice contains important information about your rights and our responsibilities under the Fair Credit Billing Act.

#### Notify Us in Case of Errors or Questions About Your Bill

If you think your bill is wrong, or if you need more information about a transaction on your bill, write us (on a separate sheet) at Ascent Card Program, Alegis Group LP, P.O. Box 88020 Sioux Falls, SD 57109-8020. Write to us as soon as possible. We must hear from you no later than sixty (60) days after we sent you the first bill on which the error or problem appeared. You can telephone us, but doing so will not preserve your rights.

In your letter, give us the following information:

- Your name and account number.
- The dollar amount of the suspected error.